UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ENRIQUE RUIZ CONTRERAS,

     Plaintiff,

v.                                    Case No.:  2:18-cv-739-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

Plaintiff Enrique Ruiz Contreras filed a Complaint on November 2, 2018.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security

Administration ("SSA") denying his claim for a period of disability and disability insurance

benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter

referred to as "Tr." followed by the appropriate page number), and the parties filed a joint

memorandum detailing their respective positions.  (Doc. 27).  For the reasons set forth herein,

the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security

Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2),

1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of

persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.        Procedural History

### A.        Plaintiff's 2012 Application

Plaintiff previously filed for benefits on April 10, 2012, alleging an onset date of

February 12, 2012.  (Doc. 27 at 1 (citing Tr. 127).[1]  On August 25, 2014, ALJ Brian Lemoine

found Plaintiff to be not disabled within the meaning of the Social Security Act.  (Tr. 127-41).

The ALJ's decision was upheld on review by the Appeals Council.  (*Id*. at 147-62).

### B.        Plaintiff's 2014 Application

Plaintiff subsequently filed for benefits on September 23, 2014, alleging disability

beginning February 10, 2012.  (*Id*. at 156).  On March 15, 2016, ALJ Vincent M. Casio found

Plaintiff to not be disabled within the meaning of the Social Security Act from August 26, 2014

through the date of the decision.  (*Id*. at 156-68).

ALJ Casio noted that while Plaintiff alleged an onset date of February 10, 2012, ALJ

Lemoine's August 25, 2014 decision was binding as to Plaintiff's disability status for the period

February 10, 2012 through August 25, 2014.  (*Id*. at 157).  ALJ Casio explained that the prior

decision concerning Plaintiff's disability status for the period February 10, 2012 through August

25, 2014 was final because Plaintiff's April 10, 2012 application was denied, the denial was

confirmed by the Appeals Council, and "no new or material evidence has been furnished, which

---

[1]  The parties' joint memorandum and the record are inconsistent regarding the alleged onset
date.  The joint memorandum refers to an alleged dates of February 12, 2012, and February 10,
2012.  (*See* Doc. 27 at 1, 10).  In ALJs Lemoine's and Casio's respective decisions, they state
Plaintiff's alleged onset date is February 10, 2012.  (Tr. 130, 156).  In the 2017 decision, ALJ
Johannes states that Plaintiff alleges an onset date of February 12, 2012.  (*Id*. at 10).

would warrant reopening of the application." (*Id*.). Therefore, ALJ Casio considered Plaintiff's disability status only for the period beginning August 26, 2014, the day after ALJ Lemoine's decision date. (*Id*.).

### C. Plaintiff's 2017 Application

On June 21, 2017, Plaintiff filed an application for a period of disability and disability insurance benefits. (Tr. 10). Plaintiff asserted an onset date of February 12, 2012. (*Id*.). Plaintiff's 2017 application was initially denied on August 4, 2017 and on reconsideration on October 26, 2017. (*Id*. at 10). On March 22, 2018, ALJ Ryan Johannes held an administrative hearing. (*Id*.). ALJ Johannes found Plaintiff not to be disabled from August 26, 2014, through June 30, 2017, the date last insured. (*Id*. at 22). ALJ Johannes, too, noted that the earliest date Plaintiff could be found disabled was August 26, 2014, because Plaintiff's prior application for disability benefits was denied in the August 25, 2014 decision by ALJ Lemoine and upheld upon review of the Appeals Council. (*See id.* at 10). On September 10, 2018, the Appeals Council denied Plaintiff's request for review. (Doc. 27 at 1).

### D. Plaintiff's Appeal

Plaintiff filed a Complaint in the United States District Court on November 2, 2018. (Doc. 1). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 15). This case is ripe for review.

## III. Summary of the Administrative Law Judges' Decisions

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Specifically, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, subpt. P, app. 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

In reaching their respective decisions, ALJs Lemoine, Casio, and Johannes each performed the requisite five-step sequential evaluation.

### A.    ALJ Lemoine's August 25, 2014 Decision

In his August 25, 2014 decision, ALJ Lemoine found Plaintiff met the insured status requirements through December 31, 2016. (Tr. 129).

At step one of the sequential evaluation ALJ Lemoine found Plaintiff had not engaged in substantial gainful activity since February 10, 2012, the alleged onset date. (*Id*. at 130).

At step two, ALJ Lemoine determined that Plaintiff had the following severe impairments: "major depression; alcohol dependence; chronic lumbar strain with mild herniation at the L4 to L5 level; and mild tendinopathy of the left shoulder." (*Id*. at 130).

At step three, ALJ Lemoine determined Plaintiff's impairments, including substance use disorder, met Listings 12.04 and 12.09 of 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). (*Id*. at 131). ALJ Lemoine found that if Plaintiff stopped the substance abuse, "the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have an impairment or series of impairments." (*Id*. at 133). In making this determination, ALJ Lemoine explained that Plaintiff's severe physical impairments, being musculoskeletal in nature,

would not likely decrease in severity if the Plaintiff stopped his substance abuse. (*Id.*). ALJ Lemoine also found that if Plaintiff stopped substance abuse, he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d) and 416.920(d)). (*Id.* at 134).

At step four, ALJ Lemoine found the following: "[i]f the Claimant stopped the substance abuse, the claimant would have the residual functional capacity to perform the full range of light work, with a non-exertional limitation for simple unskilled tasks, as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." (*Id.* at 135). ALJ Lemoine determined that if Plaintiff stopped the substance abuse, Plaintiff would be unable to perform is past relevant work as a barber, warehouse worker, or army transportation worker, which ALJ Lemoine indicated is analogous to an auto mechanic. (*Id.* at 139). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that if Plaintiff stopped the substance abuse, there would be jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 140).

Based on this analysis, ALJ Lemoine found:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 C.F.R. 4-4.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance abuse disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act.

(Tr. 140). Thus, ALJ Lemoine found Plaintiff to not be disabled at any time from the alleged onset date of February 10, 2012 through August 25, 2014, the date of the decision. (*Id.* at 140-41).

**B.     ALJ Casio's March 15, 2016 Decision**

In his March 15, 2016 decision, ALJ Casio found that Plaintiff met the insured status requirements through June 30, 2017.  (*Id*. at 158).

At step one of the sequential evaluation, ALJ Casio found that Plaintiff had not engaged in substantial gainful activity since August 26, 2014.  (*Id*. at 159).

At step two, ALJ Casio determined that Plaintiff had the following severe impairments: "Major depressive disorder; Post traumatic stress disorder; Alcohol use disorder, in remission; Chronic lumbar strain with mild herniation at L4-5; Mild tendino pathy [sic] of the left should; and Status-post left ankle surgery/Bostrum procedure (20 C.F.R. 404.1520(c))."  (*Id*.).

At step three, ALJ Casio determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (*Id*.).

At step four ALJ Casio found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can frequently reach including overhead reaching, with the left upper extremity.  The claimant can understand, remember and carry out simple, routine repetitive work related tasks, with occasional contact with supervisors, co-workers and members of the public.

(*Id*. at 160).

ALJ Casio determined that Plaintiff was unable to perform any past relevant work.  (*Id*. at 166).  The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id.*).  The ALJ noted that the vocational expert (VE) identified the following representative occupations that Plaintiff was able to perform:  (1)

Folding Machine Operator, DOT # 208.685-014, light, SVP 2; (2) Mail Clerk, DOT # 209.687-026, light, SVP 2; and (3) Inspector, DOT # 727-687-062, light, SVP2. (*Id.* at 167).[2] ALJ Casio concluded that Plaintiff was not under a disability at any time from August 26, 2014, through the date of the decision. (*Id.*).

C.    **ALJ Johannes' March 22, 2018 Decision**

In his March 22, 2018 decision, ALJ Johannes found Plaintiff last met the insured status requirements on June 30, 2017. (*Id.* at 13).

At step one of the sequential evaluation, ALJ Johannes found that Plaintiff had not engaged in substantial gainful activity during the period of August 26, 2014, through his date last insured of June 30, 2017. (*Id.*).

At step two, ALJ Johannes determined that Plaintiff had the following severe impairments:  "left shoulder degenerative joint disease; mild cervical degenerative disc disease; mild lumbar degenerative disc disease; and a history of left ankle surgery, status post-surgery." (*Id.*).  At step three, ALJ Johannes determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 14).

At step four, ALJ Johannes found:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except he can occasionally climb ramps and stairs, but never climb ladders and scaffolds.  He can occasionally balance, stoop, kneel and crouch, but never crawl.  He can occasionally reach above the head with his left upper extremity and frequently handle with the left upper extremity.  He should avoid concentrated

---

[2]  "DOT" refers to the *Dictionary of Occupational Titles*.

exposure to extreme cold and heat and vibrations, and he should
avoid all exposure to unprotected heights.

(*Id*. at 15).

The ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.* at 21).  The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (*Id.* at 21).  The ALJ noted that the vocational expert identified the following representative occupations that Plaintiff was able to perform:  (1) Marker, DOT # 209.587-034, light, SVP2; (2) Router, DOT # 222.587-038, light, SVP 2; and (3) Rental Clerk – storage, DOT # 295-367-026, light, SVP 2.  (*Id.* at 22).  ALJ Johannes concluded that Plaintiff was not under a disability at any time from August 26, 2014, through June 30, 2017, the last date insured.  (*Id.* at 22).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; accord *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.        Analysis

On appeal, Plaintiff raises four issues. As stated by the parties, the issues are:

1.      Whether Due Process was Violated by the ALJ's Refusal to Permit Plaintiff's Representative to Examine the VE About the Source for His Job Numbers;

2.      Whether Substantial Evidence Supports the Administrative Law Judge's Failure to Find Plaintiff's Mental Impairments Severe and to Include Relevant Restrictions in the Residual Functional Capacity and in Hypothetical Questions to the Vocational Expert. The ALJ Also Without Notice Addressed an Issue not Included in the Notice of Hearing by Reviewing and Revisiting the Final and Binding Decision of ALJ Lemoine that Plaintiff Suffered from Severe Mental Impairments;

3.      Whether the ALJ Properly Considered All Medical Opinions on the Record; and

4.      Whether the Decision was Made by an ALJ Who Was Constitutionally Appointed.

(Doc. at 27). The Court addresses each issue in turn.

### A.        Due Process and Job Numbers

Plaintiff first argues that the ALJ violated his due process rights by failing to allow Plaintiff's representative to examine the VE regarding the source of his job numbers and by failing to rule on Plaintiff's representative's post-hearing motion requesting that the VE provide the methodology used by the source. (*Id*. at 14).

In response, the Commissioner argues that Plaintiff's contention that the ALJ was biased is without merit, and the VE's testimony provides substantial evidence supporting the finding that a significant number of jobs exist in the national economy that Plaintiff can perform. (*Id*. at 21, 27).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "It is indisputable that the ability to cross-examine witnesses is fundamental to due process." *Marin v. Comm'r of Soc. Sec.*, 535 F. Supp. 2d 1263, 1265 (M.D. Fla. 2008). However, this right is not absolute in administrative cases. *Cent. Freight Lines, Inc. v. United States*, 669 F.2d 1063, 1068 (5th Cir. 1982). Specifically, a claimant is entitled "to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d); *see also* 20 C.F.R. § 404.950(e). The ALJ has the discretion to determine whether cross-examination is warranted. *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 962 (11th Cir. 2016) (citing *Demenech v. Sec'y of Dep't of HHS*, 913 F.2d 882, 884 (11th Cir. 1990)).

In completing the five-step sequential process, the ALJ has a duty to develop a full and fair record, whether the claimant is represented by counsel or not. *Mosley v. Acting Comm'r of Soc. Sec. Admin.*, 633 F. App'x 739, 741 (11th Cir. 2015) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Nevertheless, the claimant bears the burden of proving that he is disabled and, accordingly, is responsible for producing evidence to support his claim. *Id.* Moreover, remand is required only when:

> [T]he record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 2015). In other words, "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id.* Prejudice requires a showing that "the ALJ did not have all of the

relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

*Id.* at 742.

### 1. Due Process

Plaintiff contends his due process rights by the ALJ "preempting Plaintiff's representative's attempt to explore the basis for the VE's job numbers." (Doc. 27 at 15). Plaintiff maintains this demonstrated the ALJ's bias. (*Id.*). Further, Plaintiff argues the ALJ relied on materials not in the record to make a predetermination of what the representative would say and relied on this predetermination to prevent cross-examination of the VE regarding the methodology for job numbers in this case. (*Id.*).

The specific exchange concerning the basis for the VE's job numbers is as follows:

| | |
|---|---|
| ALJ: | Is there any conflict with anything you've testified to today and the Dictionary of Occupational Titles? |
| VE: | My testimony has been in accordance with the DOT and its companion, except for the aspects of reaching overhead, absence and off task which are not addressed in those publications. I base my answers for this on my education, training and experience over the last 36 years ongoing -- placing clients, doing job analyses and working with employers. |
| ALJ: | Counsel, do you have any questions for the vocational expert? |
| ATTY: | All right. What is your source of job numbers? |
| VE: | Job Browser Pro which is used by vocational experts all across the country every day. |
| ATTY: | And how does Job Browser Pro get their numbers? |
| VE: | You can go to SkillTran.com, and look under resources, and it's there under documentation. |
| ATTY: | I understand but – |
| VE: | It's about -- there's two documents in there. One of them is eight pages long, and the other one is five pages long. |
| ATTY: | Are you not able to testify today as to the methodology used by Job Browser Pro? |
| VE: | Oh, absolutely, if you would -- if we need to take the Court's time, this is going to take at least a half hour for me to give it to you. |
| ATTY: | Why would it take so long -- |

| | |
|---|---|
| VE: | Just to -- look it up yourself. |
| ATTY: | -- to give that answer? |
| VE: | Because it's an eight page document and a five page document. This is not a very simple thing to do. |
| ATTY: | Okay. So let me see if I can lead you through it in a more -- |
| ALJ: | Okay. Counsel, I know you're trying to argue that the VE's testimony is worthless. You do it in every case. Your firm does it with every case. Okay. Counsel, I know you're trying to argue that the VE's testimony is worthless. You do it with every case. Your firm does it with every case. I don't need this runaround you go I have researched the admissibility of vocational expert testimony. I know what is allowed and what is not allowed. Do you have specific objections to the vocational expert's testimony? |
| ATTY: | Yes, Your Honor. But first I'd just like to state that I'm not trying to show that the testimony is worthless. I'm trying to impeach this testimony regarding job numbers which can only be used to deny my client's claim. So I'm just advocating for my client. But my objections would be that the job numbers are unreliable, that there's no reasonable connection of the numbers to the DOT code. And that's my objection to the testimony. |
| VE: | I disagree with that wholeheartedly. |
| ALJ: | Okay. Do you have any further questions for the VE? |
| ATTY: | No further questions, Your Honor. |

(Tr. at 87-89).

Plaintiff states that he renewed his request after the hearing and submitted a motion to the ALJ requesting that the VE be required to proffer the methodology documentation underlying the his job source numbers, but Plaintiff contends that the ALJ failed to respond to the motion. (Doc. 27 at 18; *see* Tr. 353-54). Plaintiff maintains that by refusing the consider or reference the post-hearing motion in his decision, and by preventing inquiry into the job numbers methodology, the ALJ's decision violated Plaintiff's due process rights and was not supported by substantial evidence. (*Id*. at 20).

Plaintiff relies on *Marin v. Comm'r of Soc. Sec.*, 535 F. Supp. 2d 1263 (M.D. Fla. 2008) for the proposition that the inability to fully cross examine the VE was prejudicial. (*Id*. at 15). In *Marin*, the Court held that the ALJ's decision to restrict the claimant's attorney to posing only

hypothetical questions to the VE was "arbitrary and prevented Marin's counsel from conducting a meaningful cross examination." *Marin*, 535 F. Supp. 2d at 1266. Therefore, the Court found because "[t]he decision issued by the ALJ clearly relied on [the VE's] testimony, and the credibility of that testimony was untested," it was prejudicial to limit the claimant's counsel's cross-examination." (*Id.*)

The Court finds *Marin* distinguishable. In contrast, the ALJ here did not restrict Plaintiff's counsel to hypothetical questions only, but instead limited Plaintiff's counsel to questions material to the issues. *See* 5 U.S.C. § 556(d); *see also* 20 C.F.R. § 404.950(e). The VE had already testified his methodology was based on the DOT, as well as his education, training, and experience over the last 36 years. (*See* Tr. 85-86). Thus, the Court finds that *Marin* is distinguishable and the ALJ here did not err in limiting cross-examination of the vocational expert.

Plaintiff also cites *Lynch v. Astrue*, 358 F. App'x 83 (11th Cir. 2009) for the proposition that an ALJ must allow cross-examination of the VE as to job numbers because "without information as to the basis of the testimony, substantial evidence [does] not support the conclusion there were other jobs [claimant] could perform." (Doc 27 at 18). In *Lynch*, the plaintiff appealed the district court's affirmance of the Commissioner's denial of disability insurance benefits and supplemental security income. *Lynch*, 358 F. App'x at 84. The Eleventh Circuit reversed and remanded the action to the Commissioner, finding the Commissioner's decision was not supported by substantial evidence. *Id.* at 88. The plaintiff claimed that the ALJ erred by not allowing the plaintiff's attorney the opportunity to cross-examination the VE on the job numbers. *Id.* at 87. The Eleventh Circuit explained that the VE testified:

> When [Plaintiff's] attorney asked the VE how she came up with these numbers, the VE remarked that her calculations were not

> mathematical, and that she used her best judgment of the employers who employ this type of worker, the people for this occupation, the size of MARTA, the size of Hartsfield/Jackson Airport: "And that was the basis of my reducing the overall number down to approximately 1,000. In my opinion, if one actually studied, and called, and checked, 1,000 would be very conservative."

*Id.* When the plaintiff's attorney probed further, the ALJ restrained counsel from asking any further questions on the job numbers for this representative occupation as well as another. *Id.* at 87-88. The Eleventh Circuit held that the "mere stipulation to the VE's qualifications" does not preclude a claimant from questioning the basis for the VE's professional opinion and judgment. *Id.* at 88. Furthermore, the Eleventh Circuit held that it would have been helpful to allow the VE to articulate the basis for her conclusions as to the job numbers. *Id.*

The Court finds *Lynch* distinguishable. Unlike *Lynch*, the testimony of the VE here as to job numbers was not confusing. The VE testified that he used data from the Job Browser Pro, which he testified is "used by vocational experts all across the Country" and that his testimony was consistent with the DOT, except for aspects not addressed in those publications. (Tr. at 86-87). Further, when a vocational expert testifies as to the source or sources of his estimates for jobs, a vocational expert is not required to "provide a comprehensive statistical explanation of how he arrived" at the number of jobs in the national economy that a plaintiff is able to perform. *See Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402 (11th Cir. 2012); *see also Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (holding after a VE testifies that her opinion was based on census figures, state information, labor market surveys, and job analyses, she was not required to provide detailed reports or statistics and the ALJ is permitted to rely on her opinion).

Here, the vocational expert testified that his source for the data was the DOT as well as his 36 years of experience in the industry, which the Court finds is sufficient. *See* 20 C.F.R. §

404.1566(d) ("[W]e will take administrative notice of reliable job information available from various governmental and other publications."); *see also Irvin v. Comm'r of Soc. Sec.*, No. 8:15-CV-1582-T-JSS, 2017 WL 928739, at *4 (M.D. Fla. Mar. 9, 2017)("Pursuant to the regulations, an ALJ may take administrative notice of reliable job information available from various governmental and other publications, including the DOT." (Internal quotations and citations omitted)). Thus, the Court finds that the ALJ did not err in limiting cross-examination of the vocational expert.

### 2. Job Numbers

Plaintiff also argues that the vocational expert's job numbers were unfounded and cites numbers provided by the Bureau of Labor Statistics (BLS) in its publication, Occupational Employment Statistics (OES). (Doc. 27 at 18-20).

To the extent Plaintiff argues that the VE's testimony was not clear and rendered the ALJ's decision meritless, the Eleventh Circuit held in *Webster v. Comm'r of Soc. Sec.*:

> Unlike the situation in which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES. Furthermore, the figures in the OES are not part of the SSA's regulatory scheme. 20 C.F.R. § 404.1566(d)(1), (5).

773 F. App'x 553, 556 (11th Cir. 2019). In *Webster*, the Eleventh Circuit noted that the VE had relied on his own experience, knowledge of the industry and the DOT constituted substantial evidence that a significant number of jobs existed in the national economy that Plaintiff could perform. (*Id.* at 555). The Court noted that Webster's challenge to the VE was unavailing in part because, "during the hearing, Webster did not question the VE's qualifications and the questions that he posed to the VE did not address his present concerns about the reliability of the VE's testimony." (*Id.*).

Similarly here, Plaintiff's counsel appeared the question the VE's methodology regarding job numbers, but did not question the VE's qualifications. (*See* Tr. 81, 86-89). Plaintiff's counsel expressly stated his objections to VE's testimony were "that the job numbers are unreliable, that there's no reasonable connection of the numbers to the DOT code. And that's my objection to the testimony." (Tr. 88-89). Plaintiff's counsel also stated that he could not "stipulate to the expertise of Dr. Lucas [the VE]," but it does not appear that Plaintiff's counsel ever specifically questioned the VE's qualifications. (*See id*. at 81).

Further, while Plaintiff attempts to attack the number of jobs available using the BLS as support, the Court finds the combined number of jobs the VE testified to is sufficient. *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934-35 (11th Cir. 2015); *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005).

Plaintiff also relies on the recent United States Supreme Court decision in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) to argue the importance of being able to inquire and contest the methodology by which a VE derives his or her job numbers. (Doc. 27 at 20). In *Biestek* the Supreme Court held that a VE's testimony regarding the number of jobs in the national economy can constitute substantial evidence even when the VE, upon request, refuses to produce supporting data of that testimony. *Id*. at 1151. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id*. at 1154. The Supreme Court emphasized the relative informality of disability hearings and noted the proper inquiry for the substantiality of evidence, as it applies to a VE's testimony, is a case-by-case basis, taking into account all features of the VE's testimony, and the record as a whole. *See id*. at 1157.

The Court finds that the considerations outlined in *Biestek* weigh in favor of affirmance in this case. Accordingly, the Court finds that the ALJ did not err in limiting cross-examination

of the VE and did not err in relying on the VE's testimony as to the number of representational jobs in the national economy that Plaintiff is capable of performing. Further, Plaintiff did not adequately demonstrate any prejudice. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence as to the number of representative jobs in the national economy that Plaintiff is able to perform.

### B. Plaintiff's Mental Impairments

Plaintiff next argues the ALJ failed by not finding Plaintiff's mental impairments severe. (Doc. 27 at 30). Within this issue, Plaintiff raises at least two sub-issues. The Court will first address Plaintiff's argument regarding the ALJ's alleged failure to find Plaintiff's mental impairments severe. The Court will then turn to Plaintiff's other arguments and evaluate whether the ALJ erred in rejecting the prior decisions by ALJs Lemoine and Casio, and whether the ALJ erred by discounting the VA's disability ratings.

### 1. Whether Substantial Evidence Supports the ALJ's Finding as to Plaintiff's Mental Impairments.

Plaintiff argues that the ALJ erred in failing to find Plaintiff's mental impairments severe and to include relevant limitations in the RFC related to this impairment. (Doc. 27 at 35).

The Commissioner responds that Plaintiff failed to meet his burden of proving he had a severe mental impairment and that "[t]he objective medical findings and other evidence do not indicate that Plaintiff's mental condition would have affected his ability to perform basic mental work activities, particularly for any consecutive twelve-month period during the relevant time period[.]" (*Id*. at 38).

The Court notes that, at step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v.*

*Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

In the Eleventh Circuit, however, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted).

Here, the ALJ found that Plaintiff suffered from the following severe impairments: "left shoulder degenerative joint disease; mile cervical degenerative disc disease; mild lumbar degenerative disc disease; and a history of left ankle injury, status post-surgery." (Tr. 13). Thus, the ALJ found that Plaintiff met the requirements at step 2 and continued with the sequential evaluation. (*Id.*).

In addition, so long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including his alleged mental impairments – any potential error is harmless. *See Griffin*, 560 F. App'x at 841-42. Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §] 404.1529 and SSRs 16-3p." (Tr. at 19). Further, the ALJ stated he "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." (*Id*.). The ALJ noted that he thoroughly considered Plaintiff's mental limitations and, in making his decision, found the opinions of Robert Hodges, Ph.D., and James Brown, Ph.D., "overstated Plaintiff's limitations, considering the numerous mild mental health findings on examinations throughout the record." (*Id*. at 13).

Plaintiff also argues the ALJ erred by failing to address both Plaintiff's significant history in concluding his mental limitations were not severe, and also Plaintiff's GAF scores of 50 and 45. (Doc. 27 at 33). The Court finds the ALJ properly considered Plaintiff's significant history in reaching his decision that Plaintiff's mental health impairments were not severe. The ALJ specifically explained that there were "numerous mild mental health findings" found on the record, and he relied on those findings in making his determination. (*See* Tr. 13-14).[3] Moreover, the Plaintiff's argument regarding the ALJ's failure to address his GAF scores are not persuasive. As this Court succinctly explained in another decision:

---

[3]  In the Joint Memorandum the Commissioner cites the following pages on the Transcript referring to mental examinations during the relevant period that showed "mostly normal results, save for depressed mood and/or effect:" Tr. 13, 383-84, 392, 428-29, 448-49, 695, 707, 714, 724, 731, 746, 786, 800, 804, 813, 824, 830, 860, 1433, 1505, 1516, 1523, 1536-37, 1545, 1561-62, 1577, 1611, 1627, 1643, 1653, 1660, 1685-86, 2280, 2284, 2286, 2299. The Court has reviewed each of the listed documents above and finds the record supports the ALJ's conclusion that Plaintiff does not have severe mental impairments.

> [A]s the Eleventh Circuit recently held, "GAF Scores do not
> necessarily reflect a person's ability to do work." *Thornton v.
> Commissioner, Social Security Admin.*, 597 Fed. Appx. 604, 613
> (11th Cir. 2015). Further, the Commissioner does not accept GAF
> scores as meaningful in the Social Security context. *Nye v.
> Commissioner of Social Security*, 524 Fed. Appx. 538, 545 (11th
> Cir. 2013). That determination is supported by the fact that the most
> recent edition of the Diagnostic and Statistical Manual of Mental
> Disorders (DSM-5) (5th ed., 2013), p. 16, has discontinued the use
> of the GAF scale. Under these circumstances the law judge
> appropriately explained that the Commissioner has "declined to
> endorse the GAF scale for use in the disability programs"

*Childress v. Berryhill*, No: 8:16-cv-753-T-23TGW, 2017 WL 2772612, at *10 (M.D. Fla. June 1,

2017), *report and recommendation adopted*, 2017 WL 2721825 (M.D. Fla. June 23, 2017). This

Court agrees. Therefore, the ALJ's decision to address Plaintiff's GAF scores do not undermine

the ALJ's findings. Based on the ALJ's review of the medical records in the decision, the Court

finds no error because the ALJ considered all of Plaintiff's impairments, whether severe or non-

severe, in combination. Thus, any potential error by the ALJ in finding that Plaintiff's mental

impairments were not severe was harmless. *See Griffin*, 560 F. App'x at 841-42.

The ALJ further considered these findings in evaluating Plaintiff's RFC. "The residual

functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's

remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440

(11th Cir. 1997). An individual's RFC is his or her ability to do physical and mental work

activities on a sustained basis despite limitations secondary to his established impairments.

*Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a

plaintiff's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Comm'r

of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has

consistently held that "the claimant bears the burden of proving that he is disabled, and

consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In this case, Plaintiff states that "the ALJ erred in failing to find Plaintiff's mental impairments severe and to include relevant limitations in the RFC and in questions to the VE." (Doc. 27 at 36). Plaintiff argues:

> The ALJ's error in failing to find Plaintiff's mental impairments severe was not harmless because the RFC and questions to the vocational expert did not reflect any limitations related to mental impairments such as a limitation to simple repetitive tasks, limited interaction with the general public, coworkers, or supervisors, or limits on Plaintiff's ability to maintain concentration, persistence, and pace.

Here, as stated above, the Court finds that the ALJ considered Plaintiff's mental impairments, but found them not severe. The ALJ explicitly noted, "[t]he undersigned has carefully considered the non-severe impairments in assessing the claimant's residual functional capacity and finds no specific functional limitations beyond those outlined above." (Tr. 21). Therefore, the ALJ was not required to include the above-mentioned limitations in his RFC and questions posed to the VE. Further, Plaintiff failed to prove that her mental impairments, whether severe or not severe, would have caused additional limitations in her ability to work or prevented her from performing her past relevant work. For the foregoing reasons, the Court finds that the ALJ did not err in failing to find Plaintiff's mental impairments severe and, even if the ALJ erred, the error was harmless because the ALJ found other impairments severe and continued to step 3 of the sequential evaluation. The Court further finds that the ALJ did not err in Plaintiff's RFC determination.

## 2. Whether the ALJ Erred by Rejecting Prior ALJ Decisions.

Plaintiff also argues the ALJ erred by rejecting the findings in ALJ Lemoine's August 25, 2016 decision and ALJ Casio's March 15, 2016 decision, by finding that Plaintiff did not have severe impairments and, in doing so, should have included his decision to address ALJ's Lemoine's "final and binding decision" in the Notice of Hearing. (*Id*. at 31).

The Commissioner responds by arguing the ALJ was only required to evaluate Plaintiff's condition from August 26, 2014, through June 30, 2017, and was not required to give a *res judicata* effect to the prior decisions. (*Id*. at 39). The Eleventh Circuit has held that *res judicata* does not attach to cases where "the factual time period for [the claimant's] current application is different from [the] previous application." *Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009); *McKinze v. Comm'r*, 362 F. App'x 71, 73 (11th Cir. 2010).

### i. ALJ Casio

Plaintiff claims it was improper for ALJ Johannes to reject ALJ Casio's findings as to the severity of Plaintiff's mental impairments. (Doc. 27 at 30). The Court disagrees. In ALJ Casio's decision, he considered Plaintiff's disability from August 26, 2014 through March 15, 2016, overlapping with ALJ Johannes' time frame of August 26, 2014 through June 30, 2017. (Tr. at 10, 157). While ALJ Johannes came to a different conclusion regarding the severity of Plaintiff's mental impairments, he supported his conclusion by noting, "[t]here is no history of partial or inpatient mental health treatment, special education or convincing psychotic symptoms, during the relevant period. At times, he exhibited depressed and anxious mood. However, examinations were otherwise, routinely, within normal limits." (Tr. 13). The Court finds that ALJ Johannes properly supported his decision as to the severity of Plaintiff's mental impairments. *See Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (noting substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion).

### ii.    ALJ Lemoine

Plaintiff also claims it was improper for ALJ Johannes to reject ALJ Lemoine's final and binding decision that Plaintiff's major depression was severe and improper for the ALJ to not include this "issue" in the Notice of Hearing. (Doc. 27 at 31). As explained above, the ALJ was not required to give Plaintiff notice of his consideration of ALJ Lemoine's decision, because the ALJ was not required to consider ALJ Lemoine's decision. The time period covered in ALJ Lemoine's decision was from February 10, 2012 through August 26, 2014. (Tr. 127-41). While Plaintiff alleged an onset date of February 12, 2012 in the application at issue here, the ALJ noted that because Plaintiff's prior application was denied on August 25, 2014, and upheld on review by the Appeals Council, the earliest Plaintiff could be found disabled was August 26, 2014. (*Id.* at 10). Thus, the time period considered in the decision at issue does not overlap the time period in ALJ Lemoine's prior decision. Accordingly, the ALJ did not err in failing to adopt or follow ALJ Lemoine's findings.

### 3.    Whether the ALJ Erred in Discounting the VA's Disability Ratings.

Plaintiff next argues that the ALJ erred by discounting the VA's 100% Disability Rating in finding Plaintiff's mental impairments were not severe. (Doc. 27 at 31).

The Commissioner responds that the agency's recent adoption of 20 C.F.R. § 404.1504 renders prior precedent requiring the ALJ to give "great weight" to a VA's determination no longer binding. (*See id.* at 41-45).

Under the previous standard, an ALJ was required to give "great weight" to a VA determination. *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir.

2016). The ALJ was "not required to give the VA's disability determination controlling weight." *Id*. at 903. However, the ALJ was required to "seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *Id*. Under the new regulations, which apply to claims filed on or after March 27, 2017, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you [claimant] are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. The ALJ will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that is received as part of the social security disability claim. *Id*. The new regulations, therefore, appear to remove the requirement that an ALJ articulate any reasons for declining to give weight to VA disability ratings.

As Plaintiff's application was filed on June 21, 2017 – *i.e.*, after March 27, 2017 – the new regulations apply to this matter. In making his finding the ALJ stated:

> The undersigned has taken note that the Department of Veterans Affairs has purportedly assigned the claimant a service-connected disability rating of 100% (Exhibit 19E). The disability determination processes utilized by the Department of Veterans Affairs and the Social Security Administration are fundamentally different. Department of Veterans Affairs does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. Thus, a disability rating by the Department of Veterans Affairs is of little probative value in these proceedings. Therefore, the undersigned has given that rating little weight.

(Tr. at 20). In accordance with 20 C.F.R. § 404.1504, here, the ALJ considered the evidence supporting Plaintiff's VA disability rating. Plaintiff testified that since he moved to Florida he has seen the VA psychiatrist twice (Tr. 71) and has seen a VA medical doctor "three times this year"

(*id*. at 73). Further, the record contains many treatment records, and other providers from the VA. (*See* Tr. Exs. C4F, C5F, C6F, C8F, C9F). The ALJ considered those records and discussed them in his decision. (Tr. at 15-19, 24). Because the ALJ considered the underlying evidence supporting Plaintiff's VA disability rating, the ALJ was not required to review the VA disability rating itself. Therefore, the Court finds the ALJ did not err in failing to fully credit the VA's findings. For the reasons stated above, the Court declines to remand Plaintiff's case on this basis.

      **C.     Whether the ALJ Properly Considered All Medical Opinions in the Record.**

      Plaintiff argues that the ALJ failed to properly consider the opinions of VA psychologist Dr. Buckiewicz and of psychologist Dr. Needham. (Doc. 27 at 46). Also, Plaintiff argues the ALJ erred in overlooking the opinions of non-examining state agency consultant psychologists Drs. Hodes and Brown. (*Id*. at 50).

      The Commissioner argues in response that the ALJ properly considered the relevant medical evidence. (*Id*.).

      As an initial matter, the Court notes that the issues raised by Plaintiff deal with the weight afforded to various medical opinions. The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). When evaluating a medical opinion, the ALJ considers various factors, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the

record as a whole; and (5) the doctor's specialization.  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion.  *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings.  *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Eleventh Circuit has further held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*  Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

### 1.    Dr. Buckiewicz

As discussed above, in assessing Plaintiff's RFC, the ALJ considered and discussed the medical records provided by the VA. (Tr. at 20). The ALJ noted that he gave "little weight" to the VA disability rating because the process used by the VA and the SSA are "fundamentally different" and further the VA does not make a "function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as required by the Regulations." (*Id*.). Being that Dr. Buckiewicz evaluated Plaintiff in the context of a VA compensation and pension claim, and specifically notes the results are for VA purposes, the ALJ was only required to consider all the supporting evidence. *See* 20 C.F.R. § 404.1504. Here the ALJ stated he "considered the medical opinion(s) and prior administrative medical finding(s)." (Tr. 14). The Court finds the ALJ properly considered the supporting evidence and was not required to articulate additional reasons for giving little weight to the VA's findings.

Further, as a non-treating physician, the ALJ was not required to give more weight to Dr. Buckiewicz's findings. *See* 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques *or* if the opinion is inconsistent with the record as a whole in making the determination that Plaintiff was not disabled. SSR 96–2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004); *see Dyer v. Barnhart*, 395 F.3d 1206, 1211-12 (11th Cir. 2005) (noting ALJ need not refer specifically to every piece of evidence, so long as the ALJ's decision allows the court to conclude the ALJ considered the Plaintiff's medical condition as a whole). Here, the ALJ analyzed in depth the medical evidence provided in the

record in making his RFC determination and found that the VA's findings were not consistent with the record as a whole.  (*See* Tr. 14-21).

### 2.    Dr. Needham

In his decision, the ALJ explicitly noted that he considered the opinion of Dr. Needham and found that his opinion "overstates the claimant's limitations, considering the numerous mild health findings on examinations throughout the record, and the claimant's high level of independent functioning."  (Tr. at 14); *see Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding although it is not dispositive of a determination of non-disability, "[the] regulations do not, however, prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process").  Contrary to Plaintiff's argument that the ALJ failed to "explicitly consider and weigh" Dr. Needham's opinion, the Court finds the ALJ properly and explicitly articulated his reasons for discounting Dr. Needham's assessment.  (*See* Tr. 14).

Further, while there is no indication Dr. Needham was a treating physician, the ALJ can discount the weight accorded, to even a treating physician, if good cause is shown.  *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014).  Here, good cause existed as the ALJ found Dr. Needham's opinion on the ultimate issue of disability were conclusory declarations.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (finding that good cause exists when, *inter alia*, a treating physician's opinion was conclusory).  As a result, the Court finds the ALJ properly articulated good cause in discounting the weight accorded to Dr. Needham's opinion.

### 3.    Dr. Hodes and Dr. Brown.

Plaintiff summarily notes, "State agency consultants Hodes and Brown also found severe impairments in depressive, bipolar and related disorders and in trauma- and stressor-related

disorders." (Doc. 27 at 49). Plaintiff appears to argue that because the ALJ rejected the conclusions of non-examining state agency psychologists Hodes and Brown—by finding that Plaintiff's mental impairments were not severe— the decision is not supported by substantial evidence. (*See id*. at 50).

The Court disagrees. The ALJ expressly stated that he considered the opinions of Drs. Hodes and Brown explaining:

> The record demonstrates the claimant has mild limitations understanding, remembering, or applying information; mild limitations interacting with others; mild limitations with regard to concentrating, persisting, or maintaining pace; and mild limitations for adapting or managing oneself. There is no history of partial or inpatient mental health treatment, special education or convincing psychotic symptoms, during the relevant period. At times, he exhibited depressed and anxious mood. However, examinations were otherwise, routinely, within normal limits (Exhibits ClF; C2F; C3F/36, 56; C7F). There is no indication that he had difficulty following the topic of conversation or interacting with examiners or during his hearing. He did not have difficulty remembering to take medications and was able to function independently.
>
> In this regard, the undersigned has considered the opinions of the State Agency psychological consultant, R. Hodes, Ph.D. in Exhibit CIA and State Agency psychological consultant, J. Brown, Ph.D., in Exhibit C3A. Although the DDS consultants have program knowledge, no treating or examining relationship exists with the claimant. The opinions overstate the claimant's limitations, considering the numerous mild mental health findings on examinations throughout the record.

(Tr. 13).

The Court notes ALJ Johannes, in his decision, misspelled the name of Dr. Robert Hodes, as Dr. R. Hodges. (*Id*.). However, the ALJ cites Exhibit C1A, which contains Dr. Hodes evaluation. (*Id*.). Additionally, the ALJ articulated the reasons for discounting the doctors' findings. (*See id*). As the ALJ points out, these doctors were not "treating physicians;" therefore, the ALJ was permitted to discount the opinion if the opinion is inconsistent with the

record as whole.  *See* SSR 96–2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004) (finding when no treating relationship existed, the physician's opinion was not entitled to great weight).  Because the ALJ provided a detailed analysis of Plaintiff's medical records to support his decision, the Court is able to conclude from the ALJ's decision that he did not broadly reject the medical opinions, but rather considered Plaintiff's medical condition as a whole.  (*See* Tr. 13-21).

Further, it appears the ALJ did express the particular weight given to Dr. Hodes and Dr. Brown.  (*See* Tr. at 13).  Even if the Court determined the ALJ failed to state the particular weight to these two opinions, the Court finds this failure would be harmless as it would not affect the ALJ's final determination.  *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x. 555, 558 (11th Cir. 2015) ("There is no rigid requirement . . so long as the decision is not 'a broad rejection' that leaves the district court or this Court with insufficient information to conclude whether the administrative law judge considered the claimant's medical condition as a whole. . . the error is harmless if it did not affect the judge's ultimate determination."  (Internal citations omitted)).  Therefore, the Court finds substantial evidence supports the ALJ's considerations of the medical evidence on record.

### D.  Whether the ALJ Was Constitutionally Appointed.

Plaintiff's final argument is that his case should be remanded because "at the time the ALJ held the hearing and issued his decision, the ALJ was not properly appointed under the U.S. Constitution and therefore lacked the legal authority to hear and decide this case."  (Doc. 27 at 53).

The Commissioner argues that because Plaintiff failed to challenge the ALJ's appointment at the hearing, he waived his right to do so.  (*Id.* at 57-58).  Plaintiff relies on the

United States Supreme Court's recent decision in *Lucia v. SEC*., 138 S. Ct. 2044, 2051-56 (2018), in which the Supreme Court held that ALJs are inferior officers subject to appointment pursuant to the Constitution's Appointments Clause and decisions issued by ALJs who are not properly appointed under the Appointments Clause must be reversed and remanded. *Id*. The Supreme Court in *Lucia* held that a party "who makes a *timely* [emphasis added] challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia*., 138 S. Ct. at 2055. The transcript shows that Plaintiff never challenged the constitutionality of the ALJ's appointment prior to filing his Complaint with this Court. It also shows that Plaintiff's representative did not make the Appointments Clause argument at the May 1, 2018 administrative hearing. (Tr. 62-90).

Importantly, after the decision in *Lucia*, court's in this Circuit have consistently held that a Plaintiff forfeits his right to an Appointments Clause challenge when failing to raise the constitutional challenge at the administrative level. *See Valle-Roman v. Comm'r of Soc. Sec.,* No. 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019) (holding "[p]laintiff forfeited her Appointments Clause argument because she failed to raise it at the administrative level"); *see also Abbington v. Berryhill*, No. 1:17-00552-N, 2018 WL 6571208, at *6 (S.D. Ala. Dec. 13, 2018) ("[T]he undersigned finds that [plaintiff] was required to raise her Appointments Clause challenge at least to the ALJ for it to be a "timely challenge" on judicial review."); *Vidrine v. Saul*, No. 1:18-00172-N, 2019 WL 2606852, at *5 (S.D. Ala. Jun. 25, 2019) (concluding that plaintiff forfeited his Appointments Clause challenge by not raising it at the administrative level, and there was not sufficient cause to excuse the forfeiture); *Wagner v. Berryhill*, No. 2:18-cv-285-FtM-UAM, 2019 WL 2724017, at *7 (M.D. Fla. Jul. 1, 2019)

(explaining "[b]ecause Plaintiff did not raise her Appointments Clause challenge at any point during the administrative proceedings, the Court finds that the issue is waived").

In this case, the Undersigned finds Plaintiff has failed to show sufficient cause to excuse forfeiture and to show remand is appropriate. Unlike in *Lucia*, where the Plaintiff raised the Appointments Clause challenge before the SEC, Plaintiff did not raise this argument at the agency level before the ALJ or the Appeals Council. Plaintiff here raises the challenge for the first time before this Court, and because this Circuit has squarely addressed this argument, the Court finds the issue waived. *See Wagner*, 2019 WL 2724017, at *7 ("Because Plaintiff did not raise her Appointments Clause challenge at any point during the administrative proceedings, the Court finds that the issue is waived."); *Abbington*, 2018 WL 6571208, at *2 (listing cases in which district courts have held that Appointments Clause challenges to Social Security ALJs are forfeited when the claimant fails to raise the issue at the administrative level).

The Undersigned also finds Plaintiff's argument that her challenge is timely based on *Freytag* and *Sims*, unpersuasive. Unlike in *Freytag*, the circumstances of this case do not warrant a finding that Plaintiff's challenge is timely. *See Freytag*, 501 U.S. at 879 (noting the exercise of discretion to review an Appointments Clause challenge for the first time on review was a "rare case"). Put simply, Plaintiff's challenge does not rise to the level of a "rare case" in which this Court should permit the challenge to be raised for the first time on appeal.

As to Plaintiff's argument that his challenge is not untimely based *Sims*, the Undersigned notes this Court has recently rejected a similar argument. United States Magistrate Judge Douglas N. Frazier, when presented with an almost identical argument, concluded:

> *Sims* concerned only whether a claimant must present all relevant issues to the Appeals Council to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us . . . Because the

> issue is whether Plaintiff's challenge is timely being presented to
> this Court for the first time, *Sims* is not applicable.

*Wagner*, 2019 WL 2724017, at *8 (internal citations removed) (citing *Shaibi v. Berryhill*, 883

F.3d 1102, 1109 (9th Cir. 2017)).  Thus, because Plaintiff failed to raise the invalidity of the

ALJ's appointment at the administrative level, and he is presenting this challenge to this Court

for the first time, *Sims* does not apply.  *See Wagner*, 2019 WL 2724017, at *8; *see also*

*Abbington*, 2018 WL 6571208, at *2.  Plaintiff has failed to show that his challenge was timely.

Accordingly, the Court will not remand based on Plaintiff's Appointments Clause challenge.

## VI.    Conclusion

Upon consideration of the parties' submissions and the administrative record, the Court

finds remand is not appropriate.  Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 32

     U.S.C. § 405(g).

2.    The Clerk of Court is directed to enter judgment accordingly, to terminate any

     pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 20, 2020.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties